**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 8, 2012

Lyle W. Cayce
Clerk

No. 11-40201

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MELINDA HERNANDEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, WIENER, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Melinda Hernandez pleaded guilty to one count of harboring an undocumented alien for financial gain. Prior to entering her guilty plea, Hernandez filed a motion to suppress any "admissions [and] written or oral statements" that she made following a warrantless search of her residence, as well as any statements made by her boyfriend and an undocumented alien who was found in her home. The district court denied the motion. Hernandez argues that the district court erred in denying her motion to suppress because the post-*Miranda*[1] statements that she, her boyfriend, and the illegal alien made

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

No. 11-40201

constituted fruits of the poisonous tree. We agree; consequently, we REVERSE the denial of Hernandez's suppression motion, VACATE the conviction and sentence, which was based on a conditional guilty plea, and REMAND for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case are fully set forth in *United States v. Hernandez*, 392 F. App'x 350 (5th Cir. 2010) (unpublished), but we recount them briefly here. Law enforcement officers received an anonymous tip that ten to fifteen illegal aliens were being held against their will in Hernandez's trailer. The officers, including Immigration and Customs Enforcement ("ICE") agents, went to Hernandez's trailer around midnight to investigate. The Government concedes that it did not have probable cause to arrest Hernandez or search her residence at this time. After announcing themselves and receiving no response, the officers banged on the doors and windows, shouting that they were police and that the occupants should open the door. The officers then heard movement within the trailer. They tried to open the front door, but the outer screen door was locked. After one of the officers broke the glass pane of the screen door with a baton, Hernandez screamed that she was coming to open the door. When Hernandez opened the door, she noticed that the officers had their weapons drawn. Although there was a dispute about exactly what transpired after Hernandez opened the door, the record reflects that Agent Garza told Hernandez about the anonymous tip and, in response, Hernandez told Agent Garza "that no one was being held against his will but also admitted—whether before or after officers entered the home is uncertain—that at least one illegal alien, a friend, was present." *Id.* at 351.

The officers searched the trailer and found two illegal aliens, Luis Alberto Andrade-Quesada and his nephew, Jose Moises Regalado-Soto, in the trailer. Hernandez, Andrade-Quesada, Regalado-Soto, and Hernandez's boyfriend, Sergio Guadalupe Ayala, who was also in the trailer at the time, were taken to

No. 11-40201

the ICE office for questioning. Hernandez and Ayala waived their *Miranda* rights and admitted that Andrade-Quesada and Regalado-Soto stayed in the trailer and that they knew that the two men were illegal aliens. Andrade-Quesada also made a statement indicating that he had agreed to pay Hernandez $150 per month so that he and his nephew could stay with her.

Hernandez was charged with harboring an illegal alien for financial gain. She pleaded guilty, but on appeal, we held that the officers' conduct was egregious, that the search of Hernandez's residence violated the Fourth Amendment, and that Hernandez's "motion to suppress should have been granted with respect to any evidence discovered on site at the trailer." *Id.* at 352-53. We reversed the order denying Hernandez's motion to suppress, vacated Hernandez's conviction and sentence, and remanded the matter to the district court to consider whether the post-*Miranda* statements made by Hernandez and Ayala at the ICE office were admissible and whether the statement made by Andrade-Quesada was also admissible. *Id.*

On remand, the Government argued that, under *New York v. Harris*, 495 U.S. 14 (1990), the post-*Miranda* statements were admissible because law enforcement officers had probable cause to arrest Hernandez at the time the statements were made based on Hernandez's prior admission at her doorway. The Government asserted that the constitutional violation, i.e., the illegal search, "had nothing whatsoever" to do with Hernandez's admission to the officer. Instead, the Government claimed that Hernandez's admission was the result of the officer's statement that he had received a tip that there were illegal aliens being held against their will in Hernandez's trailer.

Hernandez argued that the post-*Miranda* statements that she, Ayala, and the illegal alien made at the ICE office constituted fruits of the poisonous tree and should be excluded. She also argued that her doorstep admission that she had at least one illegal alien in her home, which the Government asserts gave authorities probable cause to arrest her, was obtained by exploiting the illegal

No. 11-40201

entry into her home.

The district court denied Hernandez's motion to suppress, agreeing with the Government that the statements made by Hernandez, Ayala, and Andrade-Quesada at the ICE office were admissible. Relying on *Harris*, the district court concluded that "while the search of [Hernandez's] home may have been in violation of law, [Hernandez's] admission before the search occurred gave the officers probable cause to arrest her. Therefore, any statements made at the ICE office after being Mirandized are admissible."[2]

Hernandez once again entered a conditional guilty plea, reserving the right to appeal the district court's denial of her motion to suppress the statements made at the ICE office. She was sentenced to time served and to two years and 73 days of supervised release.[3] She filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review Hernandez's conviction pursuant to 28 U.S.C. § 1291. We review the denial of a motion to suppress in the light most favorable to the prevailing party. *United States v. Garcia*, 604 F.3d 186, 189 (5th Cir.), *cert. denied*, 131 S. Ct. 291 (2010). The district court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *Id.* at 190. A finding of fact is clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir.), *cert. denied*, 131 S. Ct. 158 (2010).

---

[2] The Government notes that in the 2009 suppression hearing, the district court found that there was probable cause after Hernandez admitted to having an illegal alien present in her home, and argues that Hernandez waived her right to appeal this finding by failing to raise it in her initial appeal. We disagree. The district court's statement regarding "probable cause" in the 2009 suppression hearing did not specify whether it referenced probable cause to arrest or to search. Thus, it is unclear whether the district court actually determined that the officers had probable cause to arrest Hernandez prior to issuing its order now under appeal. We conclude that there has been no waiver.

[3] Although Hernandez was sentenced to time served, her appeal of her conviction is not moot. *See United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) (per curiam) ("To the extent a defendant appeals his conviction, his appeal is not moot simply because his term of imprisonment has expired." (citation omitted)).

No. 11-40201

## III.  DISCUSSION

Hernandez argues that her statement, as well as Ayala's and Andrade-Quesada's statements, must be suppressed as fruits of the officers' unlawful conduct.  We address the admissibility of Hernandez's statement first, and then consider whether Ayala's and Andrade-Quesada's statements are admissible against Hernandez.

### A.     Is Hernandez's post-arrest statement admissible?

Generally, "the exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'" *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001). However, evidence should not be excluded merely because it would not have been discovered "but-for" a constitutional violation. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).  "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 (internal quotation marks and citation omitted).

Verbal statements, in addition to physical evidence, are subject to the exclusionary rule.  *Id.* at 485-86.   "[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest . . . is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* at 485.  However, "since the cost of excluding live-witness testimony will often be greater, a closer, more direct link between the illegality and that kind of testimony is required." *United States v. Ceccolini*, 435 U.S. 268, 277 (1978).

When deciding whether testimony is admissible, the Supreme Court considers the degree of free will exercised by the defendant or a third party and balances the cost of "exclusion [that] would perpetually disable a witness from testifying about the relevant and material facts" against the need to deter

No. 11-40201

unconstitutional conduct in the future. *Id.* at 276-78. Although *Miranda* warnings are an important factor to consider in determining whether a statement is voluntary, they are not the only factor. *Brown v. Illinois*, 422 U.S. 590, 603 (1975). If the testimony is a confession, relevant factors for deciding whether the confession is a product of free will include: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct . . . ." *Id.* at 603-04 (citations omitted).

In this case, the district court did not consider any of these factors. Rather, the district court relied on *New York v. Harris* in concluding that the confession was admissible. In *Harris*, the Supreme Court addressed whether a written statement made by Harris at the police station should have been suppressed as the fruit of the poisonous tree because immediately prior to the statement, the police entered Harris's home without a warrant and without Harris's consent and arrested him, in violation of *Payton v. New York*, 445 U.S. 573 (1980).[4] *Harris*, 495 U.S. at 16. The Court found that arresting Harris without an arrest warrant violated the Fourth Amendment but found it unnecessary to determine whether Harris's statement was caused by exploitation of Harris's Fourth Amendment rights or whether the taint of the constitutional violation was sufficiently attenuated to permit the introduction of Harris's subsequent statement. *Id.* at 17, 19. The Court concluded that because the police had probable cause to arrest Harris *before* the illegal arrest, "his subsequent statement was not an exploitation of the illegal entry into Harris' home." *Id.* at 19. *Harris* therefore turned on the fact that the defendant's detention was lawful because the police had probable cause to arrest

---

[4] *Payton v. New York* held that the Fourth Amendment prohibits the police from entering a suspect's home without consent or a warrant in order to make a routine felony arrest. 445 U.S. at 589-90. Even though the police in *Harris* did have probable cause to arrest the defendant for committing a felony, they entered the defendant's home without consent or a warrant and made the arrest.

No. 11-40201

him *before* the unconstitutional conduct occurred.

If, as the district court suggests, Hernandez's doorstep admission gave police probable cause to arrest her, and if this admission was untainted by a constitutional violation, *Harris* would apply; however, we cannot agree with the district court's implicit conclusion that Hernandez's admission was untainted by the Fourth Amendment violation.  In our prior opinion in this case, we held that "[t]he officers' conduct during their knock-and-talk—banging on doors and windows while demanding entry, attempting a forced entry by breaking the glass on Hernandez's door, *then relying on her admission that an illegal alien was present as probable cause to enter*—violated the Fourth Amendment." *Hernandez*, 392 F. App'x at 353 (emphasis added).  We agree with Hernandez that just as the officers could not have relied on Hernandez's admission as probable cause to enter her home, they also could not have relied on the admission as probable cause to arrest her, because the officers' Fourth Amendment violation had already occurred, tainting Hernandez's admission.

While it is disputed whether the officers had actually entered the house at the time of Hernandez's statement, *id.* at 351, it is clear that a Fourth Amendment violation—"banging on doors and windows while demanding entry [and] attempting a forced entry by breaking the glass on Hernandez's door," *id.* at 353—had already occurred at the time of Hernandez's admission.

Indeed, instead of being factually similar to *Harris*, this case is remarkably similar to *Dunaway v. New York*, 442 U.S. 200 (1979), in which the Supreme Court excluded a post-*Miranda* confession because the police illegally seized the defendant without probable cause almost immediately before the statement was made.  *Id.* at 202-07.  The Court determined that seizing Dunaway and taking him to the police station for questioning without probable cause was a Fourth Amendment violation, and deemed it necessary to determine whether the connection between the constitutional violation and the incriminating statement was sufficiently attenuated to warrant its admission.

No. 11-40201

*Id.* at 216. Based on the fact that Dunaway "was . . . admittedly seized without probable cause in the hope that something might turn up, and confessed without any intervening event of significance," the Court determined that the confession must be excluded. *Id.* at 218-19.

In this case, we have already determined that the conduct of the police officers and ICE agents at the Hernandez home, which included trying to open the door and then breaking a glass pane on the door, was egregious. *Hernandez*, 392 F. App'x at 352. Once Hernandez opened the door, the record indicates that several officers had their guns drawn. These facts—the attempt to gain entry into the residence through the use of force in the middle of the night, the presence of several officers, and the fact that the officers had their weapons drawn—would have caused a reasonable person to believe that he was not free to leave or to decline the officers' request. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (noting that "the police can be said to have seized an individual only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" (internal quotation marks omitted)); *see also United States v. Mendenhall,* 446 U.S. 544, 554 (1980) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.").

Just as in *Dunaway*, Hernandez was illegally "seized" without probable cause. *Chesternut*, 486 U.S. at 573; *Mendenhall*, 446 U.S. at 554. Additionally, like in *Dunaway*, Hernandez's initial inculpatory statement at her doorway occurred "without any intervening event of significance." 442 U.S. at 218. "Intervening events of significance" include, for example, an appearance before a magistrate or consultation with an attorney. *Johnson v. Louisiana*, 406 U.S. 356, 365 (1972) (holding that the "taint" of an allegedly illegal arrest was purged

No. 11-40201

when defendant was represented by counsel and brought before a magistrate before the incriminating lineup occurred). Merely questioning a suspect is insufficient to constitute an "intervening event of significance." *See Brown*, 422 U.S. at 602-05 (no intervening circumstances where police illegally arrested defendant and then gave *Miranda* warnings and questioned him before defendant confessed); *Dunaway*, 442 U.S. at 218-19 (no intervening circumstances where defendant was illegally arrested, given *Miranda* warnings, and questioned before making incriminating statements). Here, the fact that the officer informed Hernandez about the anonymous tip after or during the course of the Fourth Amendment violation is not an "intervening event of significance." It is not at all similar to consulting with an attorney or being brought before a judge or magistrate. Therefore, we conclude that Hernandez's doorstep admission cannot form the basis of probable cause to arrest her. Because there was no probable cause to arrest Hernandez prior to her statements at the ICE office, we find *Harris* inapplicable.

Having concluded that *Harris* does not support the denial of the motion to suppress, we must consider the factors set out by the Supreme Court for determining whether Hernandez's statement at the ICE office is admissible. The factors weigh heavily in Hernandez's favor. First, there is no indication that more than a few hours passed between the Fourth Amendment violation and the statements made at the ICE office. Second, the record does not reveal, and the Government does not raise, any intervening circumstances that would have broken the causal chain. Finally, as this court previously noted, the officers' conduct was egregious. *See Hernandez*, 392 F. App'x at 352.

Were we to admit the confession, the purposes of the exclusionary rule would not be served. *Cf. Brown*, 422 U.S. at 602. For these reasons, we hold that Hernandez's post-arrest confession should have been suppressed.

B.    Are Ayala's and Andrade-Quesada's statements admissible?

Having concluded that Hernandez's post-arrest confession must be

No. 11-40201

suppressed, we must now address whether Ayala's and Andrade-Quesada's statements are admissible against Hernandez. The Government argues that the witnesses' statements are admissible because there was a reasonable probability that the officers would have lawfully encountered Ayala and Andrade-Quesada and obtained their cooperation. We have recognized that evidence that "would inevitably have been discovered without the aid of the illegally obtained evidence" need not be excluded as the fruit of the poisonous tree. *Singh*, 261 F.3d at 535 (citation omitted). However, "[t]o satisfy the inevitable discovery exception to suppression, there must have been a reasonable probability that the evidence would have been discovered from an untainted source." *Id.* The Government has the burden of proving "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . ." *Nix v. Williams*, 467 U.S. 431, 444 (1984).

Additionally, under our precedent, the Government must also show that it "was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008). Indeed, "[f]or the inevitable discovery exception to apply, 'the alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized.'" *Id.* at 580 (quoting *United States v. Cherry*, 759 F.3d 1196, 1205 n.10 (5th Cir. 1985)).

Here, the Government has offered nothing more than pure speculation that Ayala's and Andrade-Quesada's statements would have been inevitably obtained. The Government first argues that "[o]nce Hernandez admitted her criminal conduct—that she was harboring at least one alien—ICE had probable cause to arrest her," and there is "at least a reasonable probability that they would have lawfully encountered the other occupants . . . ." However, we have already rejected the argument based upon Hernandez's statement at the house. The Government cites to no evidence, either in the form of testimony or otherwise, to sustain its burden on this issue; therefore, we conclude that it has

No. 11-40201

not met the test for the inevitable discovery exception.

Additionally, applying the factors set out above, we conclude that Ayala's and Andrade-Quesada's statements were not sufficiently attenuated from the Fourth Amendment violation to render them admissible. First, the record indicates that the witnesses made their statements almost immediately after the illegal search, and the Government offered no evidence of any intervening circumstances that might have dissipated the taint of the constitutional violation. These facts weigh in favor of exclusion. *See United States v. Miller*, 146 F.3d 274, 280 (5th Cir. 1998).

Further, during the illegal search, the officers discovered incriminating evidence. This discovery likely "vitiated any incentive on [Ayala and Andrade-Quesada's] part to avoid self-incrimination," *Brown*, 422 U.S. at 605 n.12, which weighs in favor of finding that the witnesses did not make the statements of their own free will. Although they were Mirandized, this fact is insufficient to justify admission. *Cf. id.* at 603.

Finally, we must consider whether the purposes of the exclusionary rule would be served by excluding the evidence. *Ceccolini*, 435 U.S. at 277-78. If we were to rule the statements admissible, police officers would be encouraged to perform illegal searches in hopes of finding incriminating evidence against witnesses who would, in turn, have a reduced incentive to avoid confessing. *Cf. Brown*, 422 U.S. at 605 n.12. We therefore find no break in the causal chain between the statements and the constitutional violation sufficient to warrant admission of the evidence. Because neither the attenuation nor the inevitable discovery exceptions to the exclusionary rule apply, we hold that the district court erred in not excluding the testimony of Ayala and Andrade-Quesada.

## IV. CONCLUSION

We REVERSE the denial of Hernandez's suppression motion, VACATE the conviction and sentence, and REMAND for proceedings consistent with this opinion.