# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2013

No. 12-60366

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHARLES WILLIAM SCOTT,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:10-CR-99

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Charles William Scott was charged in a three-count indictment with possessing chemicals and equipment to be used for manufacturing methamphetamine (Count One), possession of pseudoephedrine to be used for manufacturing methamphetamine (Count Two), and attempted manufacture of methamphetamine (Count Three). Scott moved to suppress evidence seized during a search of the house where he lived with his mother, Mary Scott. After the district court denied his motion for suppression, Mr. Scott entered a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4

No. 12-60366

conditional plea of guilty to Count Three and reserved his right to appeal the denial of the motion to suppress. Mr. Scott filed a timely notice of appeal and challenges the denial of the motion to suppress. For the following reasons, we **AFFIRM**.

## BACKGROUND

Local law enforcement officers and agents of the Mississippi Bureau of Narcotics had reason to believe that Mr. Scott cooked methamphetamine at an abandoned cotton gin adjacent to the property where he lived with his mother. Four agents traveled to the Scotts' house and parked in the driveway behind Mr. Scott's car. Two agents went to the front door and two others went to the side of the house to make sure that no one went out the back door. When the agents asked to see Mr. Scott, Ms. Scott stated that she had not seen him. An agent told her they had seen him at the house earlier that day and Ms. Scott went to find him. When Mr. Scott came to the door the agents asked him about manufacturing methamphetamine.

The agents then asked Ms. Scott, who owned the house, for consent to search the property. Ms. Scott did not consent and told the agents that she wanted them gone by the time she got back from picking up her grandchildren from school. She refused to give Mr. Scott control over the premises so police could search the property while she was gone. The agents did not, however, leave the property. Rather, they told Mr. Scott that they were going to search the gin, located on a tract not owned by Ms. Scott, before leaving. In addition, the agents asked Mr. Scott to remain outside and not return to the house.

After finding no contraband in the gin, the agents noticed Ms. Scott's boat just on the gin side of the unfenced line dividing the gin property from Ms. Scott's property. In the boat they found a plastic bottle, with a tube coming out if it, as is used in making methamphetamine. Mr. Scott was immediately handcuffed and placed in custody, while one of the agents began typing an

No. 12-60366

application for search warrant.  Shortly thereafter, an agent smelled ammonia near a garbage can on the edge of Ms. Scott's property.  In the garbage can the agent found another plastic bottle that was believed to be used for a "one pot cook" of methamphetamine.

When Ms. Scott returned with her grandchildren, the agents persuaded her and Mr. Scott to sign written forms consenting to a search of the house.  The agents found residue of methamphetamine and precursor chemicals in the house.

## STANDARD OF REVIEW

On appeal of suppression issues, this court reviews questions of law de novo and questions of fact for clear error.  *United States v. Cooke*, 674 F.3d 491, 493 (5th Cir. 2012).  A factual finding by the district court is clearly erroneous only if the reviewing court is "left with a definite and firm conviction that a mistake has been committed."  *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012) (internal quotation marks and citations omitted).  The evidence presented at the suppression hearing is viewed in the light most favorable to the prevailing party.  *Id.*  Thus, the district court's ruling to deny should be upheld "if there is any reasonable view of the evidence to support it."  *Cooke*, 674 F.3d at 493 (citation omitted).

## DISCUSSION

A warrantless search "is presumptively unreasonable" unless the government shows that the search fell within an exception to the warrant requirement such as consent or plain view.  *U.S. v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011).  The burden is on the government to "bring the search within an exception."  *Id.* (citation omitted).

I.    **Knock and Talk**

Mr. Scott argues that, because the agents' initial "knock and talk" was unsuccessful, they had a duty under *U.S. v. Gomez-Moreno* to "retreat

3

cautiously," 479 F.3d 350, 356 (5th Cir. 2007), among other deficiencies in the knock and talk. The propriety of the knock and talk is mooted because Ms. Scott refused consent and the agents acquiesced. The relevant question is whether the agents fulfilled any duty to retreat.

According to the *Gomez-Moreno* court, the officers in that case should have ended their knock and talk when no one answered the door and "changed their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance." *Gomez-Moreno*, 479 F.3d at 355–56. The agents here took the advice of the *Gomez-Moreno* court. After Ms. Scott refused to consent to a search of her house, the agents surveyed the options presented by the *Gomez-Moreno* court and chose the third option: conduct further surveillance. Specifically, the agents chose an investigation of open fields and an adjacent property. Accordingly, the analysis turns on the permissibility of that search standing on its own outside of the context of the knock and talk.

### A.    Search of the Gin and Boat

"[E]xploration of open areas outside the curtilage does not constitute Fourth Amendment activity, meaning such areas may be entered by police even when probable cause is lacking." 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.4(a) (4th ed. 2004). The evidence was found in an uncovered boat that was not only well away from the Scotts' house but, despite being owned by Ms. Scott, was on an adjacent property. It was outside the curtilage of the house and unprotected from outside observation. Accordingly, the plain view and open fields doctrines apply, and there is no constitutional infirmity for the search of the boat.

No. 12-60366

## B.    Evidence in Garbage Can

The agents searched the garbage can[1] after detecting an odor of ammonia indicating potentially dangerous equipment used in cooking methamphetamine. "[I]t would be foolhardy to delay a search if there were reason to believe [a container] contained . . . some . . . dangerous instrumentality." *U.S. v. Johnson*, 588 F.2d 147, 151 n.5 (5th Cir. 1979). Accordingly, the search of the garbage can was justified under exigent circumstances.[2]

## II.    Consent to Search

We look only at the voluntariness of Mr. Scott's consent. "The standard for measuring . . . consent is objective reasonableness." *U.S. v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996). Consent must be freely and voluntarily given. *U.S. v. Thompkins*, 130 F.3d 117, 121 (5th Cir. 1997). Whether consent to search is voluntary is a question of fact, and a finding of voluntariness may be overturned only if clearly erroneous. *U.S. v. Sutton*, 850 F.2d 1083, 1085 (5th Cir. 1988). "Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses." *Id.* at 1086.

### A.    Detention of Mr. Scott

To determine if someone is detained, this court looks to whether a reasonable person in the detainee's position "would have understood that he was no longer free to move without the consent of the inspectors but, instead, was

---

[1] The garbage can was about 100 feet from a public road, but was closer to the Scotts' property line than to their house.

[2] Mr. Scott misses the mark in relying on state trespass law. The question we ask is not whether agents violated state law but rather whether they violated the Fourth Amendment. *U.S. v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992) (stating that the Fourth Amendment does not exist to "discourage . . . violations of state law"); *see also U.S. v. Eastland*, 989 F.2d 760, 765–67 (5th Cir. 1993) (refusing to exclude evidence on the basis that agents were trespassing under state law).

arrested and in their custody." *United States v. Johnson*, 846 F.2d 279, 283 (5th Cir. 1988). This is true regardless whether the detainee is told he is under arrest. *Id.* Unreasonable duration may morph a permissible investigatory detention into a de facto arrest. *U.S. v. Zavala*, 541 F.3d 562, 579–80 & n.8 (5th Cir. 2008) (holding that one hour and thirty minutes detention "morphed from a *Terry* detention into a de facto arrest" while expressing "no opinion on whether a *Terry* detention could exceed one hour and thirty minutes based on a different set of facts").

Between thirty and fifty minutes elapsed from the time the agents arrived and when they first found incriminating evidence. Between ten and fifteen minutes elapsed from the time Ms. Scott refused consent and when the agents first found incriminating evidence. Agent Stringer asked, not ordered, Mr. Scott to stand outside with him.[3] According to Mr. Scott, he did not ask the agent if he could return to his house and the only instruction the agent gave him was "don't get close to me." Mr. Scott's vehicle was blocked in by the law enforcement vehicles. Mr. Scott was not handcuffed until the agents found incriminating evidence. Given the totality of the circumstances, the agents' actions did not amount to a de facto arrest.

## B.    Six-Factor Voluntariness Test

As no constitutional violation preceded consent to search the Scotts' house, the only remaining analysis is application of the six-factor voluntariness test to determine if Mr. Scott's consent was coerced.[4] The six factors are:

> 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and

---

[3] According to Mr. Scott, the agent "wanted to start talking. We went out in the yard."

[4] Scott does not brief his apparent contention that Mary Scott's consent to search was involuntary, therefore, the point is waived.

intelligence; and 6) the defendant's belief that no incriminating evidence will be found.

*U.S. v. Macias*, 658 F.3d 509, 523 (5th Cir. 2011) (citation omitted). "[N]o single factor is determinative." *Id.*[5]

As explained above, any detention of Mr. Scott before they found incriminating evidence and handcuffed him did not amount to a de facto arrest. Although he consented while handcuffed, the agents were uniformed and armed but did not draw their weapons or threaten violence. Four agents were present. Ms. Scott was concerned that social services would temporarily take custody of her grandchildren, and Mr. Scott agreed to let the agents search in order to avoid the agents detaining Ms. Scott. Mr. Scott had talked to Agent Stringer on numerous occasions in the past, and he had given Agent Stringer confidential source drug information. Mr. Scott willingly talked to Agent Stringer while the other agents searched the gin. Mr. Scott attended some college but did not earn a degree. Mr. Scott almost certainly knew that the agents would find the coffee filter containing crystal meth residue in his bedroom. Weighing each of the factors, the district court's ruling that Mr. Scott's consent was voluntary was not clearly erroneous.[6]

## CONCLUSION

Accordingly, the district court's decision is **AFFIRMED**.

---

[5] Because neither any detention of Scott nor the specific alleged violations in this case concerning the knock and talk constitute the predicate for the two-prong inquiry, we need not and do not look to whether the "consent was an independent act of free will" by focusing on the "'causal connection with the constitutional violation.'" *Macias*, 658 F.3d 509, 520 (quoting *U.S. v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993)).

[6] The court need not and does not reach the issue of whether the doctrine of inevitable discovery applies.