# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40880

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERT ALLEN MONTGOMERY,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and BARKSDALE and GRAVES, Circuit Judges.

CARL E. STEWART, Chief Judge:

In May 2012, officers stopped Robert Allen Montgomery in the driveway of his home for traffic violations. A subsequent weapons frisk revealed cocaine. Montgomery was arrested, his car searched, and his Blackberry smartphone confiscated. The Blackberry contained images of minors engaged in sexual activities, and Montgomery was subsequently indicted and convicted of possessing and receiving child pornography. In this appeal, he challenges on both factual and legal grounds the denial of his motion to suppress the evidence of pornography found on his phone. We AFFIRM.

No. 13-40880

## I.

On May 3, 2012, at approximately 12:55 a.m., three Laredo Police Department officers were standing and talking on the street outside of Montgomery's mobile home on Olive Street.[1] They had just finished issuing a ticket to two individuals for theft of some alcohol from a nearby store. Officer David Casarez, a nine-year veteran of the Laredo police, then witnessed a vehicle leave the home, known to Casarez as a "drug house," and return approximately five minutes later. Casarez had arrested six or seven people in front of the home in the preceding few months.[2] He also had intelligence from one of the prior arrestees that the resident drug dealer resupplied at a mechanic shop a few blocks away on Springfield Avenue, and that those resupply trips took about five minutes.

When the vehicle returned, the driver had his high beam lights on and failed to signal to turn into his driveway. Casarez approached the vehicle, and the driver, Montgomery, exited (though it is unclear whether he did so at Casarez's request). Montgomery gave Casarez a false name (though he later revealed his real name). Casarez then attempted to frisk him. Montgomery became "combative," resisted the frisk by pushing Casarez's hands away from his right front pocket repeatedly, and was eventually restrained by another officer. Casarez felt a small bulge in Montgomery's front pocket during the frisk. He later testified that he did not believe the object was a gun or a knife, and that "[i]t could have been anything, a receipt, a bubble—maybe a gum wrapper." After Casarez felt the bulge, he asked Montgomery what it was. Montgomery stated that it was a "dime" of cocaine. Casarez removed the

---

[1] These facts, unless otherwise noted, are provided in the light most favorable to the Government. *See United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014).

[2] The parties dispute when these arrests were made. Viewing the facts in the light most favorable to the Government, as we must, they were made in the few months preceding the stop at issue in this case.

No. 13-40880

cocaine, read Montgomery his *Miranda* rights, handcuffed him, and placed him under arrest.[3]

Approximately 30 minutes after the stop, police obtained Montgomery's written consent to search his house. The search of the home involved three or four officers, took 20 to 25 minutes, and revealed no drugs or contraband with the exception of a smoking pipe and a spoon with white powdery residue. During that time, Montgomery, who was allowed inside the home to use medicine for a respiratory condition (but remained handcuffed), repeatedly asked for his cell phone so he could erase "naked pictures" that he did not want his father to see. Eventually, another officer—Officer Eduardo Juarez— brought Casarez the cell phone from Montgomery's car. Montgomery agreed to assist Casarez in navigating the phone to erase the pictures in exchange for providing Casarez with his supplier's phone number. Montgomery directed Casarez to press a button on the phone. As soon as Casarez pressed that button, however, an image that Casarez believed to be an underage nude female appeared. Casarez looked through a few more photos and then ceased to inspect the phone. Montgomery then alleged the phone belonged to his drug dealer, but later admitted it was his, acknowledged he had downloaded the pictures from the Internet, and asked if they could be erased.

Casarez read Montgomery his *Miranda* warnings again, placed him in the patrol unit, and drove him to the station. When Casarez ran Montgomery's name, he discovered Montgomery had an outstanding parole warrant for robbery. Montgomery was indicted for knowingly receiving and possessing child pornography. *See* 18 U.S.C. § 2252A(a)(2), (a)(4)(B). The district court denied his subsequent motion to suppress, and he was convicted after a short bench trial. The presentence report attributed 180 images of child

---

[3] One of the officers had a canine, but the dog was never employed at the scene.

No. 13-40880

pornography to Montgomery. He was sentenced to a below-guidelines 96 months in prison and 15 years of supervised release.

Montgomery brings two challenges to the district court's decision. First, he claims, there was not enough particularized evidence that he was armed and dangerous to justify the frisk.[4] Second, he argues that even if the frisk were justified at the outset, Officer Casarez exceeded the permissible scope of the frisk by continuing the patdown after determining that Montgomery did not have a weapon.

The Government contends that there was no constitutional violation, but argues that even if one occurred, the cell phone search was the product of an independent act of free will on Montgomery's part—that is, the consent Montgomery gave was sufficiently attenuated from any alleged constitutional violation to purge the taint of that violation.

## II.

This court uses "a two-tiered standard of review for appeals from the denial of a motion to suppress: Factual findings are accepted unless clearly erroneous, and the district court's ultimate conclusion as to the constitutionality of law enforcement action is reviewed de novo." *United States v. Jackson*, 390 F.3d 393, 396 (5th Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 917 (2005). All evidence is viewed in the light most favorable to the prevailing party, here the Government. *See United States v. Rounds*, 749 F.3d 326, 337–38 (5th Cir. 2014).

## III.

At the outset, we note that it is not necessary to our decision today to determine if Officer Casarez violated Montgomery's rights either by frisking

---

[4] Montgomery does not challenge the validity of the stop. He appears to concede that it was justified by at least one of the traffic violations described above.

him without the requisite suspicion that he was armed and dangerous or by exceeding the permissible scope of the frisk.[5] Based on our review of the record, we hold that the pornography on the cell phone was obtained by Montgomery's consent, which was the product of an intervening independent act of free will on Montgomery's part that purged the taint of any alleged constitutional violation. *See Wong Sun v. United States*, 371 U.S. 471, 486–88 (1963). For purposes of evaluating whether Montgomery's consent was valid, we will assume *arguendo* a Fourth Amendment violation.

"Consent to search may, but does not necessarily, dissipate the taint of a fourth amendment violation." *United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993) (citation omitted). Consent is valid if it was: 1) voluntary and 2) an "independent act of free will." *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006). Montgomery does not challenge the district court's determination that the consent was voluntary. Instead, he focuses on whether the consent was an independent act of free will, a subject on which the district court did not make any findings because it did not find a Fourth Amendment violation. To determine if consent was independent, this court looks to factors articulated by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). Those factors are: "1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the initial misconduct." *United States v. Jones*, 234 F.3d 234,

---

[5] This method is permissible, and adheres to the constitutional avoidance doctrine. *See United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) ("However, it is unnecessary for us to determine whether the questioning that took place here constituted an unreasonable detention, because, even if it did, we hold, consistent with all other authorities, that Andrews's valid voluntary consent to the search cured any Fourth Amendment violation that may have occurred."); *United States v. Grajeda*, 497 F.3d 879, 882 (8th Cir. 2007) (assuming a Fourth Amendment violation in an initial search, but holding subsequent search validated by intervening voluntary consent). *See generally* Thomas Healy, *The Rise of Unnecessary Constitutional Rulings*, 83 N.C. L. Rev. 847 (2005).

243 (5th Cir. 2000). "The absence or presence of one of these factors is not a per se indication of free will sufficient to break the causal connection between the illegality . . . and the evidence sought to be suppressed." *United States v. Wilson*, 569 F.2d 392, 396 (5th Cir. 1978).

Montgomery argues that there was "no break in the chain of events, nor any evidence that [his] purported consent to search his cell phone and post-arrest statements were independent acts of free will sufficient to purge the taint of the Fourth Amendment violation." He emphasizes that: 1) the gap between the stop and the consent was only 40 minutes; 2) the *Miranda* warnings and *his* raising the issue of the cell phone are not intervening events of significance; and 3) the violation was flagrant because the officers "acted deliberately in initiating and carrying out the illegal patdown."

The Government disagrees with Montgomery's version of the timing of the consent, and represented at oral argument that the consent was given between 50 and 55 minutes after the stop. The Government points to multiple intervening circumstances—including *Miranda* warnings and Montgomery's decision to broach the issue of searching the cell phone—and also argues that the police misconduct was not flagrant because, at worst, it consisted of a "single 'pinch' of an item felt in a pocket during a justified *Terry* weapons pat down."

**A.**

As to the first factor, there is no strict time between illegal conduct and consent that would serve to either validate or invalidate the consent. *Compare, e.g.*, *United States v. Hernandez,* 670 F.3d 616, 623 (5th Cir. 2012) (finding consent invalid where "no indication that more than a few hours passed between the Fourth Amendment violation and the [incriminating] statements"), *and United States v. Gomez-Moreno*, 479 F.3d 350, 352–54, 358 (5th Cir. 2007) (holding consent tainted when obtained 45 minutes after

unconstitutional raid), *overruled on other grounds by Kentucky v. King*, 131 S. Ct. 1849 (2011), *with Rawlings v. Kentucky*, 448 U.S. 98, 107, 111 (1980) (finding confession admissible when obtained 45 minutes after improper arrest).[6]  There is, however, substantial authority for the proposition that consent given within a few seconds or minutes of the violation generally favors the defendant.  *See* Wayne R. LaFave, *Search & Seizure* § 8.2(d) n.140 (4th ed. 2004) (collecting cases).  A few hours between the events, though, often favors the government.  *See United States v. Sheppard*, 901 F.2d 1230, 1239 (5th Cir. 1990) (King, J., dissenting) ("The attenuation exception, however, requires greater temporal distance than seconds or minutes.  Supreme Court decisions . . . have generally found that *hours* must elapse before evidence is purged of its taint.").

Assuming a Fourth Amendment violation—but granting the Government the assumption of a 55-minute gap, which is plausible in light of the record—we conclude that this factor favors Montgomery.  Although the law is unsettled in this area, *Hernandez* and *Gomez-Moreno* each show that approximately one hour between an illegal search and consent favors the defendant.  *See Hernandez*, 670 F.3d at 623; *Gomez-Moreno*, 479 F.3d at 352–54, 358.

Indeed, *Rawlings*, the only case cited by the Government on this issue, provides support for the view that the temporal proximity here favors Montgomery.  In *Rawlings*, police detained three individuals, including the petitioner, in a home while waiting for a search warrant to issue.  *See* 448 U.S. at 100–01, 107.  The detention lasted approximately 45 minutes.  *Id.* at 100–

---

[6] Though the *Brown* factors originate in a confession case, 422 U.S. at 603–04, they are used by courts to evaluate the independence of both confessions and evidence obtained via consent.  *See, e.g.*, *Wilson*, 569 F.2d at 396–97 (applying *Brown* factors where evidence obtained by means of consent to search rather than a confession).

No. 13-40880

01. During that period, the detainees "sat quietly in the living room, or at least initially, moved freely about the first floor of the house," and one "just went on in and got a cup of coffee and sat down and started waiting for the officers to return." *Id.* at 107–08 (internal quotation marks omitted). After they returned with the warrant, police searched a bag that contained drugs, and the petitioner immediately confessed ownership of the contraband. *Id.* at 100–01. The Court, though it found the confession admissible, did not rely on the 45-minute interval to support its holding. *See id.* at 107–08. The Court noted that while "under the strictest of custodial conditions such a short lapse of time might not suffice to purge the initial taint," the degree of freedom afforded the detainees "outweigh[ed] the *relatively short period of time* that elapsed between the initiation of the detention and petitioner's admissions." *Id.* (emphasis added).

By contrast, here, Montgomery was clearly under arrest, handcuffed, and permitted none of the freedoms of the *Rawlings* detainees that the Court explained counterbalanced the "relatively short period" of 45 minutes between the initiation of the detention and the confession. *See* 448 U.S. at 108. This factor therefore favors Montgomery. The 10 additional minutes separating the two critical events in this case from those in *Rawlings* cannot be said to alter this conclusion. Of course, however, temporal proximity is not dispositive. *See United States v. Kelley*, 981 F.2d 1464, 1471 (5th Cir. 1993) ("It is true, as Kelley correctly asserts, that no significant period of time elapsed between the allegedly illegal detention and Andrews's consent. That factor alone, however, is not dispositive."). We therefore proceed to address the remaining factors.

**B.**

The second factor—which requires an evaluation of intervening circumstances—favors the Government. Most fatal to Montgomery's argument on this point is that the consent he gave to search his cell phone was

8

unsolicited. "[E]ven less is required to show that the consent is voluntary and untainted" when the consent is unsolicited. LaFave, *Search & Seizure* § 8.2(d); *see also id.* ("In determining whether the consent was, as the Court put it in *Brown*, 'obtained by exploitation of an illegal arrest,' account must be taken of . . . whether the consent was volunteered rather than requested by the detaining officers . . . ." (quoting *Brown*, 422 U.S. at 603)); *United States v. Canseco*, 465 F.2d 383, 385 (5th Cir. 1972) (holding evidence found in appellant's house admissible where defendant "not only invited the agents to search his premises but later insisted on a second search," and where "the searches were initiated as a result of appellant's unsolicited invitation"); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1012 (10th Cir. 1992) ("While her unsolicited consent does not end the inquiry, it weighs heavily into our conclusion that agents did not coerce Mrs. Garcia into signing the consent form."); *Hubbard v. Tinsley*, 350 F.2d 397, 398 (10th Cir. 1965) (finding unsolicited consent where habeas petitioner, initially under investigation for murder, told officers they could use a key found in his possession to open a bus station locker that led to evidence supporting his subsequent burglary prosecution).

Montgomery repeatedly requested that the officers access his cell phone; he stated he wanted the officers to remove the photos so that he could conceal them from his father. There is no indication in the record that the officers requested to search the cell phone, or were independently interested in its contents. That unique intervening circumstance separates this particular act of consent from the doubtless more frequent occurrence: consent provided *after* an officer's request to conduct a search.

Additionally, while the following facts are not controlling (as Montgomery rightly points out), they further support a holding that the consent was sufficiently detached from the arrest to purge any taint. First,

No. 13-40880

officers at least once read Montgomery his *Miranda* rights before searching the cell phone. *See United States v. Basey*, 816 F.2d 980, 995 (5th Cir. 1987) ("Although we have written that the fact that a defendant was given *Miranda* warnings, standing alone, will not prove that the statement was sufficiently an act of free will, we also observe that the curative power of *Miranda* warnings may be given great weight in some situations." (internal quotation marks, citation, and brackets omitted)). Second, he had a criminal history, and at one point served over two years in prison for participating in an armed robbery. *See id.* at 996 (taking into account criminal history in intervening circumstances inquiry). Finally, he was removed from the police car and allowed into the home, where he was calmly using medicine for his respiratory condition in the house before he offered the consent.

Montgomery relies on *Chavez-Villarreal*, but that case involved a man giving consent to search his car after the officer had requested consent and made his suspicions that it contained narcotics known. 3 F.3d at 128. By contrast, here, Montgomery broached the phone search himself, and he does not contend here (though he did in the district court) that the officers had any expectation of recovering pornography on the phone from the search.

## C.

Finally, looking to the third factor, we conclude that the police misconduct here—again, assuming it *was* misconduct—was not flagrant. The alleged misconduct here was in frisking Montgomery without a reasonable belief that he was armed and dangerous, or in exceeding the permissible scope of the frisk. These alleged violations do not rise to the level of flagrancy found by the Supreme Court and this court requiring suppression of the evidence.

For example, in *Brown*, Chicago police officers, lacking probable cause to search or make an arrest but suspicious that the defendant was involved in an unsolved murder, broke into the defendant's house, searched it, and then—

No. 13-40880

after pointing a gun at him as he returned home—arrested him. 422 U.S. at 592. The Court found this violation flagrant and suppressed the defendant's subsequent inculpatory statements. *Id.* at 604–05. In *Gomez-Moreno*, a large group of officers investigating a tip that the defendant was harboring illegal aliens drew their weapons and entered her house without a warrant. 479 F.3d at 352–53. After finding illegal aliens and the defendant inside, one officer sought the defendant's consent to search another house on her property, telling her, "We're going to get in that door one way or another." *Id.* at 353 (internal quotation marks omitted). This court found that raid a flagrant constitutional violation, and reversed the denial of a motion to suppress. *Id.* at 358.

By contrast, in *Jenson*, a suspicious police officer prolonged a valid traffic stop after the passengers' drivers' licenses were cleared and reasonable suspicion dissipated. 462 F.3d at 402–03, 406 n.7. Four minutes after that, the officer requested consent to search the vehicle, which the defendant—the car's driver—gave. *Id.* at 403, 406 n.7. Before searching the vehicle, the officer, to protect himself while he was in the vehicle, conducted a frisk of the defendant that revealed weapons; he then arrested the defendant. *Id.* at 403. Although this court suppressed drug and firearm evidence obtained after the illegal frisk, *id.* at 408, we did so despite finding that "the initial officer misconduct was not flagrant." *Id.* at 407.

The alleged misconduct here closely resembles the misconduct in *Jenson*. In this case, at worst, a concededly valid traffic stop led to an unconstitutional weapons frisk conducted without reasonable suspicion. That frisk is analogous to the illegal one conducted without reasonable suspicion on the *Jenson* defendant and found to fall short of the flagrancy threshold. 462 F.3d at 403, 407. These facts do not rise to the requisite level of flagrancy to tip this factor in Montgomery's favor. *See, e.g.*, *Brown*, 422 U.S. at 592, 604; *Gomez-Moreno*, 479 F.3d at 352–53, 358.

11

No. 13-40880

## D.

The *Brown* factors collectively favor the Government here. While little time passed between the alleged violation and Montgomery's consent, his unsolicited consent coupled with the nature of the alleged misconduct lead us to conclude that the consent was valid as a voluntary, independent act of free will. Therefore, the evidence need not be suppressed as fruit of the poisonous tree.

We note that the exclusionary rule's "prime purpose"—to "deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures," *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (internal quotation marks and citation omitted)—would not be served by suppressing the pornography obtained on Montgomery's cell phone. The police were not in search of child pornography here. As the Ninth Circuit stated under somewhat similar circumstances in *United States v. Jones*:

> [W]hen officers through serendipity discover evidence concerning a suspect whom they are unlawfully investigating in connection with another, different crime, the new evidence is not tainted where the officers discovered it only because their unlawful investigation fortuitously put them in a position to do so and where their unlawful investigative intent did not extend to the additional evidence.

608 F.2d 386, 391 (9th Cir. 1979) (internal quotation marks and citation omitted).

## IV.

The conviction is therefore AFFIRMED.

12

JAMES E. GRAVES, Circuit Judge, concurring:

I agree with the majority that Montgomery's consent to Officer Casarez's search of his cell phone was sufficiently attenuated from the assumed Fourth Amendment violation so as to dissipate the taint of that violation. *See United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993). I also agree with most of the majority's discussion of the factors to be considered to determine if Montgomery's consent to the search of the cell phone was an independent act of free will.

Respectfully, in my view, Montgomery's actions do not constitute "unsolicited consent." Montgomery did not volunteer his consent to search the phone to the officers, nor did he request that the officers access his cell phone to remove the photos. Instead, Montgomery repeatedly requested that he himself be allowed to access his own cell phone to delete pictures of "naked women" because he said he did not want his father to see the pictures. Officer Casarez testified that Montgomery "wanted to use the phone to see if he could erase the pictures of the naked women." In response to Montgomery's repeated requests to be allowed to use the phone, "I told him I would help him do that, get rid of those pictures so that his dad won't get mad but I also told him I wanted the phone number of his drug dealer." Casarez testified that Montgomery agreed to that trade, and further agreed to guide Casarez to navigate the phone to get the phone number of the drug dealer. To unlock or wake up the phone, Casarez pushed a button on the phone at the direction of Montgomery, at which point a pornographic picture of what Casarez believed to be a nude seven- or eight-year-old girl "popped up."

I would not find that this exchange constituted "unsolicited consent" or a voluntary invitation for the officers to access his phone. The most reasonable reading of Casarez's testimony is that the idea of Casarez accessing the phone was raised by Casarez, not by Montgomery. Montgomery's request that he be

allowed access to his phone and subsequent agreement to the trade that Casarez suggested is not akin to the invitations to search in cases such as *United States v. Canseco*, 465 F.2d 383, 385 (5th Cir. 1972) (suspect told agents where his luggage was and said "It's in my home.  Do you want to look at it?" and subsequently "insisted that his apartment be searched and that a second search be conducted at his house"), *United States v. Mendoza-Salgado*, 964 F.2d 993, 1012 (10th Cir. 1992) (suspect's wife, a joint owner of the house that was searched "broached the search issue herself after officers told her they believed cocaine existed on the premises" and told agents to "go ahead and search," before being asked for consent), and *Hubbard v. Tinsley*, 350 F.2d 397, 398 (10th Cir. 1965) (upon being questioned about a locker located in a bus depot, suspect, who already been advised of his rights, said: "You have got the key; go see for yourselves.").  Thus, this case is different from the cases in which defendants offered unsolicited consent or actually invited officers to conduct a search.

However, in the circumstances of this case, I agree with the majority that Montgomery did consent to at least a limited search of the phone and that his consent did constitute an independent act of free will.  Most significantly, it is true that Montgomery himself raised the issue of deleting pictures from the phone, and that the officers expressed no independent interest in the contents of the phone until Montgomery raised the issue.  Although Montgomery requested that he be allowed to access the phone, he did subsequently agree to Casarez "help[ing] him" to delete the pictures and to assisting Casarez in obtaining the phone number of his drug dealer, which necessarily involved Casarez looking at the contents of the phone.  Montgomery then actively assisted Casarez gaining access to the phone by directing him which buttons to push.  Further, Casarez's search did not extend beyond the consent that Montgomery gave before the first picture "popped up" on the phone.  Lastly, as

the majority states, it is also clear from the record that the officers arrested and were investigating Montgomery for drug violations, and until the picture appeared on the phone, they were not in search of evidence of child pornography and had no reason to believe that child pornography might be found on the phone. *Cf. Chavez-Villarreal*, 3 F.3d at 128 (concluding in part that consent did not dissipate the taint of a Fourth Amendment violation where "refusal seemed pointless" because the officer "had made known his suspicions about narcotics"). I would find that all of these circumstances surrounding Montgomery's consent to a search of the phone constituted intervening circumstances and a causal break between the search and the previous violation.

I concur in the reasoning of the remainder of the majority's opinion, and in its conclusion that the denial of the motion to suppress should be affirmed.