**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 2, 2013

No. 12-40563

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARVIN MAURICE COTTON,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Marvin Cotton appeals the district court's denial of his motion to suppress evidence seized in connection with a traffic stop. We conclude that Cotton limited his consent to a search of his luggage only, so the officer's prolonged and more extensive search of Cotton's entire vehicle violated his Fourth Amendment right. Consequently, drugs uncovered during the search of the vehicle and incriminating statements made shortly thereafter must be suppressed as fruits of the unlawful search. We vacate the conviction and sentence, and we remand for further proceedings consistent with this opinion.

No. 12-40563

## I. FACTS AND PROCEEDING

In February 2011, Cotton was driving his rental car along Interstate 10 in east Texas when, without changing lanes or slowing his speed as required by Texas law, he passed Lieutenant Tony Viator's emergency vehicle parked on the side of the road. Having already received a tip from a fellow officer that Cotton might be carrying drugs, Viator conducted a stop and a lengthy detention, running license checks with dispatch and questioning separately both Cotton and his passenger, John Thornton, about their itinerary and their reasons for travel. Viator's suspicion grew when inconsistencies in Cottons's and Thornton's stories emerged, so he sought Cotton's consent to search the rental car for drugs.

The audio from the camera on Viator's vehicle recorded the following interaction between Viator and Cotton, which took place 11 minutes into the stop and before the check of Cotton's license had returned clear:

Viator:     Can I search this vehicle?
Cotton:     [Unintelligible][1]
Viator:     Hold on.  Come here.  Come here.  Come here.  Is it
            okay if I search it?
Cotton:     Search my luggage.  [Unintelligible]
Viator:     Okay.  Is it okay if I search everything in the car?
Cotton:     My luggage, yeah.

Viator began a meticulous search of the entire vehicle while Deputy Clint Landry, who had recently arrived on the scene, guarded Cotton and Thornton as they sat on the grass several yards from the car. Forty minutes into the search, and after first searching the trunk and the entire passenger cabin, Viator proceeded to examine more closely, *inter alia*, the driver's-side rear door for evidence of contraband. While squatting outside the car with that door open, he noticed loose screws and tool markings on the door's panel. He then pried back the panel and discovered a small, plastic-wrapped bundle concealed in the door's

---

[1] Viator testified at the suppression hearing that Cotton responded "Yeah, you can search it."  Cotton insists instead that he said "Yeah, my bags. I'll show you."

No. 12-40563

inner cavity. When Viator then signaled for Landry to cuff the men, Cotton fled afoot. The officers caught the less-than-nimble suspect after a brief chase, placed him under arrest, and *Mirandized* him. After that, Cotton made incriminating statements while trying to work out a deal with the officers. The plastic-wrapped bundle was later tested and discovered to contain crack cocaine.

Cotton filed a motion in the district court to suppress the drugs and the statements. The motion was referred to a magistrate judge ("MJ"), who, after an evidentiary hearing, found no constitutional violation and recommended that the motion be denied. Adopting the MJ's report *in toto* and adding little to his analysis, the district court denied the motion. Cotton pleaded guilty to one count of possession with intent to distribute more than 280 grams of cocaine base and was sentenced to 121 months in prison. He now appeals the court's denial of his motion to suppress, having reserved the right to do so in his plea agreement.

## II. STANDARD OF REVIEW

In an appeal from the denial of a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*.[2] We view the evidence in the light most favorable to the prevailing party in the district court—here, the government.[3]

## III. ANALYSIS

Although Cotton challenges the legality of the traffic stop from its inception as well as the reasonableness of its scope, we focus on his specific contention that the search exceeded the bounds of his limited consent when, instead of only searching his luggage, Viator exhaustively scoured the entire

---

[2] *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011).

[3] *Id.*

vehicle for contraband.  As we conclude that Viator impermissibly extended the search beyond the scope of Cotton's consent, we need not consider whether other constitutional infractions occurred that might also require suppression of the discovered evidence.

## A.    Limit of Consent To Search

The Fourth Amendment proscribes unreasonable searches and seizures, but it permits a warrantless search to which the suspect consents.[4]  "When conducting a warrantless search of a vehicle based on consent, officers have no more authority to search than it appears was given by the consent."[5]  Thus, it is "important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity."[6]  The Supreme Court's standard, under *Florida v. Jimeno*,[7] is "that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"[8]

Although the parties dispute precisely how Cotton responded to Viator's first request for permission to search the car, they do *not* dispute that thereafter Viator asked twice more whether he could search the car; neither do they dispute that Cotton replied both times that Viator could search Cotton's *luggage*.  Cotton urges that he meant *only* the luggage, whereas Viator testified that he

---

[4] *United States v. Garcia,* 604 F.3d 186, 190 (5th Cir. 2010).

[5] *Id.* (citing *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666-67 (5th Cir. 2003)).

[6] 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.1(c) (5th ed. 2012) (hereinafter SEARCH AND SEIZURE); *accord United States v. Green*, 388 F. App'x 375, 382 (5th Cir. 2010).

[7] 500 U.S. 248 (1991).

[8] *Id.* at 251.

No. 12-40563

understood Cotton's responses to permit a search of the luggage *in addition* to the rest of the car. The MJ assumed *arguendo* that Cotton's initial consent to search was limited to his luggage and then concluded that "the objective reasonableness standard would allow Lt. Viator to look anywhere in the vehicle where the luggage could possibly be found, including the back seat of the car and floor boards." On appeal, the government emphasizes that, during his proper search of the vehicle for Cotton's luggage, Viator discovered evidence in plain view that a door panel might conceal a hidden compartment. This discovery, the government argues, permitted Viator to pry open that door panel and search the area behind it for hidden contraband.

The government's argument rests on faulty understandings of both law and fact. True, if Cotton properly limited his consent to a search of his luggage, that consent would permit Viator to enter the car and search those items. It is also true that if, during such a *limited* entry into the vehicle, Viator were to discover evidence of a hidden compartment, that discovery might provide probable cause to search the suspected compartment.[9] The video evidence and Viator's own testimony, however, reveal that he discovered the loose screws and tool markings on the driver's-side rear door panel *not* as he was trying to locate Cotton's luggage and *not* as he was examining the contents of such luggage. Rather, after locating and searching the luggage in the backseat area of the car, Viator expanded his search for evidence of contraband to the vehicle itself by proceeding to examine, *inter alia*, the driver's-side rear door. Authority to enter and search the car for Cotton's luggage was not authority to search discrete locations within the car where luggage could not reasonably be expected to be found. Neither was it justification for lingering in and around the vehicle for 40

---

[9] *See United States v. Estrada*, 459 F.3d 627, 633 (5th Cir. 2006); *United States v. Inocencio*, 40 F.3d 716, 724 (5th Cir. 1994).

minutes—much longer than a search for and of Cotton's luggage should or could conceivably last.

*United States v. Solis*[10] is instructive. In *Solis*, an officer, with knowledge that a gun was resting on a shelf in the defendant's bedroom and with the defendant's consent to search for the gun, moved a cooler underneath the shelf to use as a step to reach the gun.[11] Moving the cooler revealed heroin, evidence of which the defendant sought to suppress.[12] Because the uncontroverted evidence showed that the cooler was moved *only to effectuate the search for the gun*, for which consent had been voluntarily given, the officer did not exceed the scope of the consent, and the heroin discovered in plain view was held admissible.[13] Here, in contrast, Viator did not discover the hidden compartment in plain view while permissibly seeking *luggage* to search for drugs, but while searching for other places inside the car that he speculated might conceal *drugs*.

Notwithstanding the government's flawed legal reasoning, the question remains whether Cotton's words reasonably conveyed to Viator consent to search the entire car and not just to find and search all luggage. "The scope of a consensual search may be limited by the expressed object of the search";[14] thus, when an officer requests to "look through the trunk" of a car but adds that he does not want to look through each item and just wants "to see how things were 'packed' or 'packaged,'" he exceeds the scope of the consent by unzipping and searching the bags in the trunk.[15] When "an officer *does not* express the object

---

[10] 299 F.3d 420 (5th Cir. 2002)

[11] *Id.* at 431.

[12] *Id.* at 431-32.

[13] *Id.* at 438.

[14] *Garcia,* 604 F.3d at 190 (citing *Jimeno,* 500 U.S. at 251).

[15] *United States v. Elliott,* 107 F.3d 810, 812, 815-16 (10th Cir. 1997).

of the search," however, "the searched party, who knows the contents of the vehicle, has the responsibility explicitly to limit the scope of the search."[16]

The complete exchange between Viator and Cotton does not lend itself to ambiguity. Even if, as Viator contended, Cotton in fact answered his first request to search the car with "Yeah, you can search it,"[17] Viator then immediately asked the same question—twice—that he contends had already been answered without restriction or limitation. Viator's attempt to confirm the response that the government now insists was Cotton's unequivocal general consent is susceptible of but two possible explanations: Either (1) Viator did not actually hear Cotton's first response and was asking Cotton to repeat it, or (2) Viator was asking Cotton to repeat his consent twice again out of an abundance of caution. If the first explanation is correct, then Viator was unreasonable in perceiving a general consent to search when he never heard Cotton consent without qualification. If the second explanation is the right one, then Viator's caution proved justified, and reason would not permit him to throw caution aside and interpret "search my luggage" as an *expansion* of the scope of consent rather than a *limitation* to it. The latter explanation would instead call for even further clarification, which Viator failed to obtain on either his second or third request for Cotton's consent.

That Cotton did not try to rein in Viator's search when it extended beyond his luggage does not affect our analysis. It is true that a defendant's failure to object after giving his *general* authorization to search might indicate that a

---

[16] *Garcia*, 604 F.3d at 190 (citing *Mendoza-Gonzalez,* 318 F.3d at 666) (emphasis added). Absent any limitation placed by the suspect, his consent to search a car will support an officer's search of unlocked containers within it. *See Jimeno*, 500 U.S. at 251; *United States v. Crain*, 33 F.3d 480, 484 (5th Cir. 1994). We are presented with the inverse case in which the suspect has consented to a search only of specific items *within* the car.

[17] The magistrate explicitly declined to resolve the dispute as to what was said in the initial unintelligible portion of the audio recording.

search, later challenged as outside the scope of consent, was actually within it.[18] But any failure to object "should not be treated as *expanding* a more limited consent, especially when the circumstances suggest some other possible reason for defendant's silence."[19] At the suppression hearing, Cotton explained that he believed further objection would have proved futile, given his belief that his prior limitation to the scope of the search was clear and unequivocal:

> Cotton:      I didn't feel that [Viator] would even talk to me at any time [during the search] because he already went outside the scope from the beginning. He just did what he wanted to do.
>
> Prosecutor: There was nothing to impede you from saying, "Excuse me, Officer. I did not give you permission to look there" and just to raise your voice to say something to the officer.
>
> Cotton:      I—
>
> Prosecutor: You never did that, did you?
>
> Cotton:      I told the officer four times where he could look. So he ignored them all four times. You wanted me to tell him the fifth time? I told him four times.
>
> Prosecutor: So the answer is no, you never told him?
>
> Cotton:      I told him four times where he could look. That's my answer.

The relevance of Cotton's failure to object as Viator proceeded to search every portion of the car closely only begs the question whether Viator was reasonable in interpreting the scope of Cotton's consent in the first place. As we have answered that question in the negative, we conclude that Viator's extensive search of Cotton's car violated the Fourth Amendment.

---

[18] *Mendoza-Gonzalez,* 318 F.3d at 667; *see also* SEARCH AND SEIZURE § 8.1(c).

[19] SEARCH AND SEIZURE § 8.1(c) (emphasis added); *see United States v. Neely*, 564 F.3d 346, 350-51 (4th Cir. 2009) (defendant's silence as officers searched the passenger cabin of his car did not overcome the limitation that he originally placed, namely, that officers may search only the *trunk*); *United States v. Wald*, 216 F.3d 1222, 1228-29 (10th Cir. 2000) (defendant's silence when police opened the trunk of his vehicle was insignificant when his initial consent was limited to the passenger compartment and the defendant's failure to object stemmed from his belief that he was under arrest and thus powerless to prevent the trunk search).

No. 12-40563

## B.    Suppression of the Evidence

"Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation."[20]   The drugs discovered during Viator's unlawful search must be suppressed as the direct product of that search.   Less obviously, Cotton's inculpatory remarks, made immediately on the heels of the unlawful search and discovery of the drugs, are likewise subject to suppression.   "When a confession is obtained following an unconstitutional search, the Constitution 'requires not merely that the statement meet the Fifth Amendment standard of voluntariness[,] but that it be sufficiently an act of free will to purge the primary taint.'"[21]   Relevant considerations include (1) the temporal proximity of the arrest to the statement, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.[22]   The government does not contend, nor would the record evidence support a contention, that Cotton's admissions were an independent act of free will sufficient to purge the taint of the constitutional violation.[23]

---

[20] *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998) (citing *Brown v. Illinois,* 422 U.S. 590, 602-03 (1975)).

[21] *United States v. Cantu*, 426 F. App'x 253, 258 (5th Cir. 2011) (alteration in original) (quoting *Brown*, 422 U.S. at 602); *see also United States v. Hernandez*, 670 F.3d 616, 621 (5th Cir. 2012).

[22] *Brown*, 422 U.S. at 603-04.

[23] Although Cotton was advised of his *Miranda* rights before making the incriminating statements, "*Miranda* warnings alone do not break the causal connection between police misconduct and a subsequent statement." *United States v. Webster*, 750 F.2d 307, 324 (5th Cir. 1984); *see also Dunaway v. New York*, 442 U.S. 200, 218 (1979); *Brown*, 422 U.S. at 603 ("*Miranda* warnings, alone and per se, cannot always make the [confession] sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.").

No. 12-40563

## IV. CONCLUSION

As the search of the vehicle *qua* vehicle exceeded the scope of Cotton's consent when it was continued beyond the point at which Viator had located and searched all of Cotton's luggage, we reverse the district court's denial of Cotton's motion to suppress, vacate his conviction and sentence, and remand for further consistent proceedings.[24]

---

[24] *See United States v. Martinez*, 486 F.3d 855, 866 (5th Cir. 2007) (recognizing that remand is the appropriate remedy when reversing a district court's denial of a motion to suppress).