# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2014

No. 12-11279

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ALBERT GUZMAN,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, OWEN, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge.

Albert Guzman was convicted, following a stipulated bench trial, of being a felon in possession of a firearm.  He appeals the denial of his motion to suppress evidence.  Because the district court expressly declined to make factual findings that may have had a determinative impact on the outcome of the suppression hearing, we vacate the conviction and sentence and remand for further findings to ascertain, *inter alia*, whether the police officer asked Guzman for consent to search his car.

## FACTS AND PROCEDURAL HISTORY

On May 11, 2010, Dallas police officers Daniel Warren Foster and George Garcia arrived at a house in response to a tip that methamphetamines were

No. 12-11279

being sold there.  Guzman was sitting in the driver's seat of a tan 1998 Dodge Intrepid parked in the driveway.  He exited the car when the officers approached.  Foster testified at the suppression hearing that he "struck up a conversation" with Guzman, who was "very cooperative."  Guzman said he was at the house to see a friend, and added that he had recently been released from prison.  Foster told Guzman that the officers had received drug complaints regarding the house and had been told that buyers parked in the driveway.

According to Foster, he then asked Guzman if there were drugs in the car and whether he could search the car for drugs.  Guzman said that Foster could search the car, that there were no drugs, but that there was a handgun in the car.  According to Foster, Guzman did not seem "particularly" anxious, and he "said it was his dad's gun."[1]  Foster searched the car and found a semiautomatic handgun under the driver's seat.  The officers did not find drugs in the car or on Guzman's person.

Foster and Garcia took Guzman to the police car, read him his *Miranda* rights, and conducted a recorded interview.  At some point, Foster and Garcia checked Guzman's criminal history and found that he had eight prior felony convictions.  During the recorded interview, Guzman admitted to knowingly possessing the gun, said he had it for protection, and repeated that it was his father's.  He said he had previously shot the gun "not at anyone but just shooting it off."  Guzman said the car belonged to him and was given to him by his wife.  Foster did not ask Guzman to "reaffirm" his consent to the search during the interview.

During the recorded interview, the following exchange took place:

---

[1] The police report describes the interaction as follows: "Foster asked AP Guzman for consent to search the vehicle for drugs.  AP Guzman informed [Foster] that there were no drugs in the vehicle, but that there was a pistol in the vehicle.  AP Guzman gave [Foster] verbal consent to search the vehicle for drugs.  AP Guzman also informed [Foster] that he had just gotten out of the prison."

2

No. 12-11279

Foster:      Like I was saying, we have had ongoing complaints about drugs being sold out of this house, and you are sitting back here behind [it]. In particular there's buyers that are supposed to come and go from where you are sitting. We see you there. You know, we come and talk to you. And you are real cool. We ask you if there are any drugs in the car, and you tell us no, but there's a gun.

Guzman:      Yeah, that's . . . that's what I said, that's why I was honest with you, right, right off the front street.

Foster:      You were very honest.

Guzman:      You know, I'm an honest person, I'm not going to lie about nothing. That's why, you know, *once you say I'm going to search the car* but there is no drugs in the car, and that's what I told you right off the front, you know there's a gun in there.

Guzman pleaded not guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1).[2] Before trial, the government filed a notice of intent to introduce evidence and statements including Guzman's May 11 admission to knowingly possessing the firearm at issue. Guzman moved to suppress the seized firearm and any incriminating statements arising from the search of his car, arguing that he did not consent to the search.[3] In its response, the government maintained that Guzman gave voluntary verbal consent to the search,[4] and, in the alternative, that the search was valid under the automobile exception to the Fourth Amendment's warrant

---

[2] At that time, Guzman's suggested defense theory was that he lacked the requisite knowledge for a conviction under § 922(g).

[3] Guzman's counsel noted that his argument was based on the understanding that the government's position was that "the search was based on Mr. Guzman's consent and not on any other basis," and thus, the motion did not address any "other unstated basis for a search."

[4] With regard to voluntariness, the government noted that Guzman spoke fluent English, had extensive interaction with the criminal justice system, was cooperative with the officers, and was not in custody when he gave his consent to the search.

requirement due to Guzman's statements that he had recently been released from prison and that there was a gun in the car.

The court held a suppression hearing on September 14, 2011, at which Foster and Garcia were the only witnesses. Foster testified that Guzman gave verbal consent to the search, and that he, Foster, should have reaffirmed that consent on the record. Nonetheless, he stated that he believed there was "probable cause to search the vehicle just based on his statements" about the gun and having been released from prison, "even without a consent." When asked what would have happened if Guzman had not consented, Foster said: "If he had just flat out said no . . . he would have been free to go. But if he had said, no, but . . . there was a gun in the car . . . I still would have searched the car." Questioned about Guzman's statement in the recorded interview that Foster had told him "I'm going to search the car," Foster responded, "No. I asked him if I could search the car." Garcia testified that he heard Foster ask Guzman for consent and that Guzman responded "yes, he could search but there were no drugs in there . . . but there was a pistol."

During its closing argument, the government argued that the search was based on valid consent, and that alternatively, even if there was "an issue with consent," the search was proper under the automobile exception. Before Guzman's attorney began his closing statement, the district court presented him with a hypothetical question:

> What if you had a clever police officer who wanted to trick a defendant into making a guilty admission and the police officer said, "I'm going to search your car whether you like it or not. When I do, am I going to find any contraband," and the person being deceived by the clever police officer said, "You won't find any drugs, but you will find a handgun"? . . . [W]hy isn't that enough? . . . The officer hasn't committed any unlawful search. The potential defendant has made a culpable admission that justifies a warrantless search at that point.

4

No. 12-11279

Guzman's attorney agreed that police officers "can use trickery," but said an officer's statement that he is going to search the car could be a "violation of [the defendant's] rights." The attorney went on to argue that Guzman "didn't give consent," citing the government's recording.

The district court orally denied the motion to suppress. It based its denial on the:

> . . . understanding of the law that the officers could resort to trickery and best case for the defense is that the officers resorted to trickery, told him that they were going to get in the car, and faced with that belief, he volunteered to the officers that there was a gun in the car. At that point I think they had probable cause under the automobile exception to go ahead and do a search. . . . [B]ased on my current understanding of the law, I think the way the defense characterizes the facts still supports a finding of probable cause.

With regard to consent, the district court stated:

> I think there is a conflict in the record, evidence that could be argued both ways on the issue of consent, but I don't think I need to reach that issue and resolve that factual question based on my understanding of the law.[5]

At the pretrial conference, Guzman's attorney requested that the district court hold a bench trial, at which Guzman would stipulate to facts establishing his "factual guilt," but would "preserve his right to contest his legal guilt" based on the denial of the suppression motion.[6] The district court agreed and held a one-day bench trial on September 10, 2012. Guzman stipulated: that he knowingly possessed a firearm, which had moved in interstate commerce; and

---

[5] The district court noted that it was "more than happy to be educated" on the probable cause issue if the attorneys disagreed with his understanding of the law. Guzman submitted a supplemental brief on October 17, 2011. The brief requested a continuance and further briefing and argument as to whether Guzman's "confession"—that there was a gun in the car—was voluntary. It does not appear from the record that this request was granted.

[6] Guzman had previously attempted to change his plea to guilty, but the government did not agree to offer him a conditional guilty plea.

No. 12-11279

that he had been previously convicted of a felony.  He waived his rights to testify and to cross-examination.

Guzman was found guilty, convicted, and sentenced to 200 months imprisonment and three years of supervised release.  Guzman appealed "the judgment and sentence," but the sole issue on appeal is whether the district court correctly denied the motion to suppress.[7]

## DISCUSSION

### I.     Standard of Review

"When reviewing a denial of a motion to suppress evidence,  this court review[s] factual findings for clear error and the district court's conclusions regarding . . . the constitutionality of law enforcement action *de novo*."  *United States v. Perez*, 484 F.3d 735, 739 (5th Cir. 2007).

### II.    Probable Cause

A warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement.  *United States v. Karo*, 468 U.S. 705, 717 (1984).  "One of those exceptions is that a warrantless search of an automobile with probable cause is justified where circumstances make a warranted search impracticable."  *United States v. Reed*, 26 F.3d 523, 528 (5th Cir. 1994); *see also New York v. Class*, 475 U.S. 106, 112–13 (1986) (explaining that the automobile exception stems from the inherent mobility of, and reduced expectation of privacy in, a vehicle).  Probable cause in this context consists of "trustworthy facts and circumstances within the officer's knowledge [that] would cause a reasonably prudent man to believe the car contains contraband."  *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir.

---

[7] Because the government has not challenged the use of a stipulated bench trial to preserve a suppression issue for appeal, we "express no opinion as to the propriety of [the proceeding," *see United States v. Richardson*, 713 F.3d 232, 234 n.2 (5th Cir. 2013); the necessity of a remand for additional factual findings, however, calls into question even the *advisability* of this truncated "trial" approach.

No. 12-11279

2010). "Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *Id.*

The district court denied the motion to suppress because it found that the officers "had probable cause under the automobile exception to go ahead and do a search" based on Guzman's statement that there was a gun in the car. Guzman maintains that his statement about the gun cannot support a finding of probable cause, because it was prompted by a Fourth Amendment violation: Foster's alleged statement that he was "going to search the car."[8]

When an officer conducts an unlawful search, the fruits of that search, including incriminating statements, may be inadmissible. *See United States v. Hernandez*, 670 F.3d 616, 621–22 (5th Cir. 2012) ("[J]ust as the officers could not

---

[8] Guzman alternatively argues for the first time on appeal that the automobile exception could not apply to this case because his car was parked in a private driveway. Because Guzman did not raise this argument at the suppression hearing, he has waived it. *See United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir. 2010) ("[F]ailure to raise *specific issues or arguments* in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.") (quoting *United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2010)). Nonetheless, we have "often proceeded to evaluate [waived] issues under a plain error standard for good measure." *See id.* A district court may commit plain error if, *inter alia*, the claimed error was "clear and obvious." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). This twin-prong of the plain error test "contemplates an error which was clear under current law at the time of trial"; "if a defendant's theory requires the extension of precedent, any potential error could not have been 'plain.'" *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005). Although we have noted that where a vehicle is "parked in the driveways of the residences of the defendants . . . exigent circumstances were required to justify a warrantless search," *United States v. Sinisterra*, 77 F.3d 101, 105 (5th Cir. 1996), we have not extended that ruling to a vehicle parked in *any* driveway. In addition, where a residence was used to sell drugs rather than "regularly use[d] . . . for residential purposes," we have held that "the Fourth Amendment concerns that arise when the police search a car that is parked in a driveway of a home, without a warrant, are not present." *United States v. Fields*, 456 F.3d 519, 525 (5th Cir. 2006); *see also* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.2(b) n.59 (5th ed. 2012) ("It is not apparent that" the automobile exception would not apply "when the vehicle is parked on the grounds of the residence where police have some lawful basis for entering that area."). Guzman's alternative argument to us—that the automobile exception does not apply to a vehicle parked in a private driveway not belonging to the defendant, where the officers believed the home in question was being used for illegal activity—does not find clear support in our precedent, hence we hold that the district court did not plainly err in assuming that the automobile exception would apply to this case. *See Garcia-Rodriguez*, 415 F.3d at 455.

7

have relied on [the defendant's] admission as probable cause to enter her home, they also could not have relied on the admission as probable cause to arrest her, because the officers' Fourth Amendment violation had already occurred, tainting [the defendant's] admission."). An inadmissible statement cannot constitute probable cause to support an otherwise illegal search. *Id.* Foster's statement, that he was "going to search the car," *could* constitute a false claim of lawful authority affecting the validity of Guzman's consent and the admissibility of his subsequent statements. *See United States v. Morales*, 171 F.3d 978, 980 (5th Cir. 1999); *United States v. Lopez*, 911 F.2d 1006, 1010 (5th Cir. 1990) (holding that consent must be "given voluntarily and not simply in acquiescence to a claim of lawful authority"). However, the district court expressly declined to make a finding on whether Foster made the controverted statement and whether Guzman consented to the search. Instead, the district court assumed that Foster's statement was allowable as "trickery."

On appeal, the government maintains that under the district court's hypothetical, the officer's statement would be mere "trickery," relying primarily on our decision in *United States v. Andrews*, 746 F.2d 247 (5th Cir. 1984). In *Andrews*, an officer secured consent to inspect the defendant's shotguns by stating that a person fitting the defendant's description "had been connected to various robberies in which a sawed-off shotgun was employed." *Id.* at 248. This was untrue; the officer's purpose was to charge Andrews with illegal possession of a firearm. *Id.* Wanting to clear his name of the robberies, Andrews gave his consent to the search. *Id.* We noted that "any misrepresentation by the Government is a factor to be considered in evaluating" whether the defendant's consent was voluntary, but in that particular case, there was no "evidence that Andrews's will was overborne." *Id.* at 248–50. *Andrews* did not establish a general rule that officers can use trickery to obtain consent; instead, it was a "narrow" decision holding that "under the facts of this case . . . the government

8

carried its burden in establishing that any taint which may have occurred" through the officer's misrepresentation did not render Andrews's consent involuntary. *Id.* at 251. By contrast, the district court in this case identified a "conflict in the record . . . on the issue of consent" and declined to "resolve that factual question."

The government contends that, because the district court made no factual findings, this court must affirm its ruling so long as any reasonable view of the evidence supports the district court's ruling. Federal Rule of Criminal Procedure 12(e), which governs motions to suppress, requires that if "factual issues are involved in determining a motion, the court shall state its essential findings on the record." Although this requirement was introduced to aid appellate review, *see* Fed. R. Crim. P. 12 (advisory commitee's notes), we have not applied Rule 12(e) inflexibly. *See United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991). We have held that, where the district court "entered no factual findings and indicated no legal theory underlying its decision to admit the evidence obtained in the consent search," we would "independently review the record to determine whether any reasonable view of the evidence supports admissibility." *Id.*

Nonetheless, as the D.C. Circuit has explained, the "any reasonable view of the evidence" rule rests on two assumptions: first, "that the district court asked the right legal questions in making its ruling," and second, "that it actually weighed the evidence bearing on the facts needed to answer them." *United States v. Williams*, 951 F.2d 1287, 1290–91 (D.C. Cir. 1991). When there is a basis to question "those assumptions, the court may dispense with [this rule] . . . and remand the case to the district court." *Id.*; *see also United States v. Chacon*, 330 F.3d 323, 329 (5th Cir. 2003) (remanding where the district court failed to make factual findings essential to the disposition of a suppression motion). In this case, we doubt the validity of both assumptions. First, the district court erroneously assumed as a question of law that any

misrepresentation on the officers' part would not affect the admissibility of Guzman's subsequent statements; second, it expressly declined to make the factual findings necessary to address that issue. *Cf. United States v. Bloomfield*, 40 F.3d 910, 914 (8th Cir. 1994) (a circuit court can review facts it "infer[s] were actually, albeit silently, found" when "the district court could have reached but one result . . . [and] presumably made whatever factual findings were needed to support the conclusion"); *Ferguson v. Hill*, 846 F.2d 20, 21 (5th Cir. 1988) ("An appellate court may affirm a decision based on incomplete findings if there can be no genuine dispute about how the trial court actually resolved the facts missing from its express findings.").

The district court assumed "the best [factual] case for the defense": that the officers told Guzman "that they were going to get in the car, and faced with that belief," Guzman "volunteered . . . that there was a gun." Under those facts, the district court found as a question of law that probable cause would exist to search. However, whether consent is voluntary following an officer's misrepresentation is a question of fact. *See Andrews*, 746 F.2d at 248; *Morales*, 171 F.3d at 980 (noting that "the mere utilization of words by officers that would reasonably be considered to be a command or order does not *preclude* the possibility of a suspect validly consenting to a search," but, instead, whether consent was given involves "a careful review of [a] fact-intensive record"). *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) ("[W]hether consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). The question whether a subsequent admission is "sufficiently an act of free will to purge the primary taint" similarly

involves an evaluation of the record. *See United States v. Cotton*, 72 F.3d 271, 274 (5th Cir. 2013).[9]

These issues are "antecedent to the question actually decided by the district court": whether Guzman's admission that there was a gun in his car could constitute probable cause to search the car. *See Chacon*, 330 F.3d at 329. Thus, we vacate Guzman's conviction and sentence and remand for the district court to determine whether Foster asked Guzman for his consent to search and whether Guzman's consent was voluntary, or, in the alternative, whether admissible evidence existed to support a finding of probable cause. If after doing so, the court again denies Guzman's motion to suppress, it shall reinstate the conviction and sentence, and Guzman could then appeal. *See United States v. Chavis*, 48 F.3d 871, 873 (5th Cir. 1995).

## CONCLUSION

For the foregoing reasons, we VACATE the conviction and sentence and REMAND to the district court to obtain additional findings.

---

[9] This inquiry implicates "(1) the temporal proximity of the arrest to the statement, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Cotton*, 72 F.3d at 274 (citing *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)). We note that, even if accepted as true, Foster's alleged statement is not so "flagrant" as the behavior described in *Hernandez*, where officers "had their guns drawn" and "banged on doors and windows while demanding entry," then "rel[ied]" on Hernandez's "admission that an illegal alien was present as probable cause to enter." 670 F.3d at 622. Nonetheless, we decline to address this question when the district court explicitly found "a conflict in the record . . . on the issue of consent." *Cf. United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995) (noting that "[o]n the facts *as found by the district court* (or established without dispute in the record), the question of probable cause is a question of law") (emphasis added).