# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40115

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARLO DENISE YOUNG,

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:18-CR-1340-1

Before KING, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Marlo Denise Young was convicted of possession with the intent to distribute heroin. Young appeals the denial of her motion to suppress the drugs seized during a traffic stop that, according to her, was unlawfully extended and broader than the Fourth Amendment permits. Because Young has not established reversible error, we affirm the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40115

## I.

## A.

On October 30, 2018, Mike Chapman, a special agent in the South Texas Specialized Crimes Task Force, pulled Young over on a highway in Kleberg County, Texas. Chapman stopped Young for speeding and for having two objects—a radar detector and a toll reader—affixed to the vehicle's windshield, partially obstructing the driver's view. In response to questioning, Young stated that the car was a rental. Chapman later asked Young where she was coming from, and, according to Chapman, she replied "Manvel or Mandel." Young stated that she did not know where Manvel or Mandel was located or adjacent to, but that she had gone there to help her "good friend and coworker" with "relationship issues."

Chapman believed this explanation did not make sense because Young was driving toward Manvel, Texas, rather than away from it. He testified that Young was "extremely nervous," that every answer started with "huh," that her voice was quivering, and that her hands "were shaking extremely bad." When asked, Young stated that she had no illegal drugs, and she declined Chapman's request to search her car.

Following a computer check, Chapman learned that Young had three prior charges or convictions for marijuana possession,[1] and he then deployed a drug-sniffing dog. At this point, "eight or ten minutes" had transpired. The dog alerted to the presence of narcotics, Young admitted that there was marijuana in her purse, and Chapman found additional marijuana in the passenger door pocket. Although Young said that she was not carrying a large amount of currency, Chapman also found $4,820 in cash.

---

[1] Chapman stated that he "couldn't tell if it was [a] conviction . . . or just a charge."

2

No. 19-40115

Chapman, accompanied by additional responding officers, later opened the car's hood and surmised that the car's battery had been replaced because "Walmart" was imprinted on it, even though that brand was not typical for this type of car. Additionally, Chapman noticed that the battery looked older, even though the rental car was new, and that the battery had been pried open. Chapman then called the rental car company, which stated that the car's battery had not been replaced.[2] Chapman removed the battery, noticed signs of tampering at the sides, and observed a vinegar smell which he associated with heroin.[3] The officers transferred the car and battery to the "Kingsville Sheriff's Office Service Center," and subsequently found approximately 10.5 pounds of heroin in the car's battery.

**B.**

On November 28, 2018, Young was indicted for possession of heroin with the intent to distribute. Young filed a motion to suppress the evidence, arguing that the traffic stop was unlawfully extended in order to perform a canine search of her vehicle and that her car was unlawfully searched without a warrant.

The district court denied Young's motion to suppress, finding that Young was permissibly stopped for speeding and that Chapman had probable cause to search the car after the dog detected narcotics. Young was subsequently convicted following a jury trial and sentenced to 168 months' imprisonment. Young timely appealed.

---

[2] Avis, the rental car company, stated at trial that it does not use Walmart batteries, and there were no reports that the car's battery had been changed.

[3] Chapman also testified that he was trained in narcotics, and that the dog was trained to locate both marijuana and heroin.

No. 19-40115

## II.

"In considering a district court's decision on a motion to suppress, this court reviews findings of facts for clear error and conclusions of law *de novo*." *United States v. Massi*, 761 F.3d 512, 519 (5th Cir. 2014). "'[W]e may consider all of the evidence presented at trial, not just that presented before the ruling on the suppression motion, in the light most favorable to the prevailing party,' which in this case is the government." *United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011) (per curium) (quoting *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)). Clear-error review is "particularly deferential where denial of the suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Ortiz*, 781 F.3d 221, 226 (5th Cir. 2015) (internal quotation marks omitted).

The district court's judgment "should be upheld 'if there is any reasonable view of the evidence to support it,'" *Massi*, 761 F.3d at 520 (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)), and this court "may affirm the district court's decision on any basis established by the record," *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.), *modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

## III.

We first evaluate Young's claim that her traffic stop was unlawfully extended to conduct a canine search. We then analyze whether there was probable cause to search under the hood of her car without a warrant.

### A.

Traffic stops must be justified by reasonable suspicion under the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). The stop must be "(1) 'justified at its inception'; and (2) 'reasonably related in

4

scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

Under the second prong, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (quoting *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc)). During a stop, an officer may "examine the driver's license and registration," "run a computer check," and "ask the driver about the purpose and itinerary of his trip." *Id.* at 430-31.

Though this "inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion," and the stop must end unless "additional reasonable suspicion arises . . . before the initial purpose of the stop has been fulfilled." *Id.* at 431. At this stage, "the relevant question in assessing whether a detention extends beyond a reasonable duration is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Brigham*, 382 F.3d at 511 (citation omitted). The reasonable suspicion standard "falls considerably short of satisfying a preponderance of the evidence standard" and instead looks to whether the "totality of the circumstances" creates a reasonable suspicion of criminal activity. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

## B.

We conclude that the traffic stop was not unreasonably extended because Chapman had reasonable suspicion to continue the traffic stop. Young was unsure whether she was coming from "Manvel" or "Mandel," and she did not know where it was located. *Cf. United States v. Beltran*, 650 F. App'x 206, 208 (5th Cir. 2016) (per curium) (that defendant "did not know the address" when he was "visiting his brother" weighs in favor of probable cause). Though Young said she was coming from Manvel, Chapman found that this explanation did

not make sense because Young was driving toward Manvel rather than away from it. The officer stated that Young's hands were shaking, that her voice was quivering, and that she appeared nervous.[4] *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). Following the computer check, Chapman learned that Young had three prior marijuana charges or convictions. Last, the dog was deployed within approximately "[e]ight or ten minutes" of the traffic stop's commencement. Accordingly, the district court could have reasonably concluded that Chapman had reasonable suspicion to extend the traffic stop to conduct a canine search.

## C.

"Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (citing *United States v. Ross,* 456 U.S. 798, 807-09 (1982)). "Probable cause in this context consists of trustworthy facts and circumstances within the officer's knowledge [that] would cause a reasonably prudent man to believe the car contains contraband." *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014) (alteration in original) (internal quotation marks omitted). Thus, "an alert by a drug-detecting dog provides probable cause to search" a vehicle. *United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012) (quoting *United States v. Sanchez–Pena*, 336 F.3d 431, 444 (5th Cir. 2003)). "If . . . officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle." *United States v. Seals*, 987 F.2d 1102, 1107 n.8 (5th Cir. 1993); *see also United States v. McSween*, 53 F.3d 684, 687 (5th Cir. 1995) (upholding a search "under the

---

[4] Young admitted to being nervous, in response to Chapman's questioning.

hood" as part of the "entire vehicle" in a search justified by an odor of marijuana).

The district court's judgment that there was probable cause to search under the hood of the car was supported by a reasonable view of the evidence. Chapman located two separate items of marijuana, neither of which Young originally disclosed when asked, which provided probable cause to search the whole car, including under the hood, for additional drugs. *See Seals*, 987 F.2d at 1107 n.8; *McSween*, 53 F.3d at 687. Moreover, the drug-sniffing dog detected narcotics, which provided probable cause to search the vehicle. *See Rodriguez*, 702 F.3d at 210. Last, the battery appeared tampered with, not original to the rental car, and smelled like vinegar, which offered trustworthy facts and circumstances to believe the battery contained contraband. *See Guzman*, 739 F.3d at 246.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.